IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


FRED J. BREWSTER,                     )
                                      )
                  Plaintiff,          )    **CIVIL ACTION**
                                      )
v.                                    )    No.  03-1399-MLB
                                      )
WAL-MART STORES, INC.                 )
ASSOCIATES' HEALTH AND                )
WELFARE PLAN,                         )
                                      )
                  Defendant.          )
_____)


## MEMORANDUM AND ORDER

This case comes before the court on the parties' cross-motions for summary judgment.[1]  (Docs. 47, 49).  The motions are fully briefed and ripe for decision.  (Docs. 48, 50, 54, 55, 56, 57). Plaintiff's motion is denied and defendant's motion is granted, for the reasons herein.

**I.   FACTS AND PROCEDURAL HISTORY**

This case arises under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461.  Plaintiff was an employee of Wal-Mart Stores, Inc. (Wal-Mart) and a Participant in the Plan. The Plan is sponsored by Wal-Mart and it is funded by employee and employer contributions.  The Plan does not exist to make a profit. (Pretrial Order at 3).

On January 20, 1993, plaintiff injured his right shoulder when he fell off a ladder while working at Wal-Mart.  Plaintiff received

---

[1] The parties agreed in the pretrial order that the case can be decided on cross-motions without a trial.  (Pretrial Order at 16).

a workers' compensation settlement of $8,552.50 from Wal-Mart for the 1993 injury.  Almost ten years later, on December 9, 2002, plaintiff submitted a letter to the Plan requesting benefits for a proposed surgery on his right shoulder.  The letter states that plaintiff does not recall any further injury to his shoulder after his 1993 fall.  For purposes of clarity only, this will be referred to as plaintiffs' supplemental workers' compensation claim.  In a letter dated December 10, 2002, Claims Management, Inc. (CMI) denied plaintiff's supplemental claim for workers compensation benefits as not work related.  (Doc. 50, exh. 6 at 310 2-4).

On December 10, 2002, plaintiff responded to CMI's denial by asserting that the injury was not work-related, but rather as a result of pulling the fifth-wheel release on his trailer. Plaintiff also went to the Occupational Medicine Minor Emergency Center on December 10, 2002.  The physician's note states that plaintiff told the doctor his injury was not from the 1993 accident but rather from pulling the release on the trailer.[2]  The physician noted his diagnosis was "right shoulder injury - not work related." (Doc. 50, exh. 6 at 310 105-06).

The Plan forwarded plaintiff's medical records to the medical Review Institute of America on January 22, 2003 to determine whether he was eligible for ERISA disability benefits.  Plaintiff's records were reviewed by a physician who is Board Certified in orthopedic surgery.  The reviewer determined that plaintiff's

---

[2] The identity of the physician who performed plaintiff's exam at the emergency center is unknown.

current problems with his shoulder were directly related to the injury in 1993.  The reviewer noted that plaintiff's orthopedic surgeon in 1993 assigned a 20% impairment rating to plaintiff's right shoulder.  The reviewer stated that this impairment rating indicates a chance for post-traumatic arthritis.  Dr. Hearon's notes on October 29, 2002, state that plaintiff is suffering from "post traumatic right glenohumeral joint arthritis, severe." (Doc. 50, exh. 6 at 310 14-16, 20).  The Administrative Committee denied plaintiff's claim for ERISA coverage for his shoulder injury based on the Plan's exclusion for injuries covered by workers' compensation.

On June 24, 2003, an administrative law judge entered an order denying plaintiff's supplemental workers' compensation claim.  The judge determined that the injuries were not work related.  (Doc. 50, exh. 6 at 310 101).  Plaintiff did not appeal the decision by the ALJ.  Plaintiff, instead, submitted an ERISA appeal request to defendant based on the judge's order and additional x-rays.  On September 5, 2003, the Administrative Committee forwarded plaintiff's medical records and the x-rays to the Medical Review Institute.  The reviewer again concluded that the injury was a result of the 1993 accident.  The reviewer found that both Dr. Hearon's office notes of October 29, 2002, and the radiologist's report of September 16, 2002, supported his conclusion. (Doc. 50, exh. 6 at 310 108-14).

On September 16, 2003, the Administrative Committee concluded that plaintiff's ERISA claim would remain denied based on the

-3-

workers' compensation exclusion in the Plan.  The Committee reviewed plaintiff's records and claims file for a third time on April 19, 2004, and again denied plaintiff's ERISA claim.  (Doc. 50 at 9-10).

Plaintiff and defendant have filed motions for summary judgment.  Plaintiff asserts that defendant's decision to deny his ERISA claim was arbitrary and capricious since Wal-Mart or CMI defended plaintiff's supplemental workers' compensation claim as not being work related yet now the committee denied plaintiff's ERISA disability claim as being covered under workers' compensation.  Defendant contends that its decision to deny ERISA benefits was proper under applicable ERISA law.

## II. SUMMARY JUDGMENT STANDARD

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here.  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a

-4-

trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  If so, the court cannot grant summary judgment.[3]  Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

**III.      ANALYSIS**

The disability plan at issue is governed by ERISA.  "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits."  Member Servs. Life Ins. Co. v. Am. Nat. Bank and Trust Co., 130 F.3d 950, 954 (10th Cir. 1997) (internal quotation omitted).

**A.   Standard of Review**

The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  If the benefit plan gives the administrator or fiduciary that authority, the court must

---

[3]     Even though the parties have filed cross-motions for summary judgment, the legal standard does not change.  See United Wats, Inc. v. Cincinnati Ins. Co., 971 F. Supp. 1375, 1382 (D. Kan. 1997).  It remains this court's sole objective to discern whether there are any disputes of material fact, see Harrison W. Corp. v. Gulf Oil Co., 662 F.2d 690, 692 (10th Cir. 1981), and the court will treat each motion separately.  See Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000).

then judge the denial of benefits according to an arbitrary and capricious standard.  See Kimber v. Thiokol Corp., 196 F.3d 1092, 1097 (10th Cir. 1999).  There is no dispute that here the plan expressly gives defendant, as plan administrator, the discretion to determine whether to deny a claimant insurance benefits under the plan.  (Pretrial Order at 4).

Since the plan grants defendant discretion, the court must apply an arbitrary and capricious standard to a plan administrator's actions.  However, the possibility of an administrator operating under a conflict of interest changes the analysis.  The Tenth Circuit has affirmed the use of the "sliding scale" approach upon finding a conflict of interest and noted that "the fiduciary decision will be entitled to some deference, but his deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict."  Chambers v. Family Health Plan Corp., 100 F.3d 818, 826 (10th Cir. 1996) (quotation omitted).  Expounding on Chambers, the Tenth Circuit, in Fought v. UNUM Life Ins. Co., 379 F.3d 997 (10th Cir. 2004), announced a two-tiered approach for determining the appropriate standard of review in cases involving a conflict of interest.  The court stated in particular that under the first tier,  when an administrator operates under a conflict of interest the plaintiff is required to prove the existence of a conflict that shows the plan administrator's dual role jeopardized his impartiality. Fought, 379 F.3d at 1005.  "[A] court should consider various factors including whether: (1) the plan is self-funded; (2) the

-6-

company funding the plan appointed and compensated the plan administrator; (3) the plan administrator's performance reviews or level of compensation were linked to the denial of benefits; and (4) the provision of benefits had a significant economic impact on the company administering the plan." Id. "If the plaintiff cannot establish a serious conflict of interest, [the court must] consider defendant's standard conflict of interest as one factor in determining whether defendant's denial of disability benefits to plaintiff was arbitrary and capricious." Id.

In this case the plan is self-funded and the plan is administered by the Administrative Committee. Defendant appoints the members of the Administrative Committee; however the members are employees of Wal-Mart Associates, Inc, and do not receive compensation for their duties on the Committee. In Kimber v. Thiokol Corp., 196 F.3d 1092, 1098 (10th Cir. 1999), the court declined to find any evidence of a conflict when the plan was self-funded but the employees who administered the plan had no pecuniary interest in the outcome. Similar to Kimber, the Committee members, as the plan administrators, have no pecuniary interest in the outcome of plaintiff's claim. Although the plan is self-funded, without any evidence that this jeopardized the Committee's impartiality, defendant is entitled to review under the arbitrary and capricious standard. Id.; see also Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 379 F.3d 1168, 1175-76 (10th Cir. 2004).

Plaintiff agrees that these facts would not give rise to a

-7-

higher scrutiny under Fought.  Plaintiff, however, asserts that defendant's investigative division, CMI, handles the workers' compensation claims and provides advice on the application of workers' compensation law to pending ERISA claims. (Doc. 48 at 7). Plaintiff alleges that this alliance has been used to deny plaintiff benefits in both his supplemental workers' compensation and ERISA disability claims.  Plaintiff's arguments are not supported by authority.  Since plaintiff has not provided proof of a serious conflict of interest, nor does the court find any evidence of an inherent conflict of interest or a serious procedural irregularity, the court will "consider defendant's standard conflict of interest as one factor in determining whether defendant's denial of disability benefits to plaintiff was arbitrary and capricious."   Fought, 379 F.3d at 1005.  In determining whether defendant's decision was arbitrary and capricious, the court must consider:

> (1) whether substantial evidence supported [defendant's] decision; (2) whether [defendant] based its decision on a mistake of law; and (3) whether [defendant] conducted its review in bad faith or under a conflict of interest.  The Administrator's decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within his knowledge to counter a claim that it was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis.

Finley, 379 F.3d at 1176.

### B.   Denial of Benefits

Defendant denied plaintiff's ERISA claim after an independent review by a board-certified orthopedic surgeon determined that

plaintiff's injury was a result of his 1993 work-related injury. The plan provides that "charges covered and/or paid under any Workers' Compensation law or act" are not covered by the plan. (Pretrial Order at 4).   Plaintiff's 1993 injury had been covered and paid under Kansas Workers' Compensation law.

Plaintiff essentially asserts that "since plaintiff has been denied workers' compensation benefits by the state of Kansas, he must be entitled to ERISA benefits."  (Doc. 48 at 15).   Plaintiff argues that if his injury would have been an extension of his 1993 injury then the ALJ would have determined that it was work-related and an aggravation of a prior injury and, therefore, plaintiff would have been eligible for workers' compensation.   However, because the ALJ did not determine that the current injury was an aggravation of the 1993 injury, plaintiff then argues that the Administrative Committee was required to reach a similar conclusion in considering his ERISA claim.   A problem with plaintiff's argument is that the record is completely devoid of what transpired during the workers' compensation hearing.  The record only contains a one-page order denying plaintiff's claim.   According to the record, plaintiff submitted this one-page order to defendant requesting an appeal.

The Tenth Circuit has held that due to the difference in parties, bodies of law and evidentiary standards, a decision by the State of Kansas Division of Workers' Compensation does not compel an automatic grant in benefits.   <u>Wagner-Harding v. Farmland Industries Inc. Employee Retirement Plan</u>,  01-3085, 26 Fed. Appx.

811, 817 (10th Cir. Mar. 28, 2001).  This is especially true in this instance since the court, nor the plan administrators, had any indication of what evidence was presented and considered by the ALJ.  Plaintiff's conclusion that defendant is trying to make an about face in its position is not persuasive since Wal-Mart, Inc., and not the plan, was defending the workers' compensation action. The committee's failure to rely on one sentence of an order and disregard the opinion of the independent medical reviewer does not amount to a finding of arbitrary and capricious conduct.

The court finds that defendant's decision was sufficiently supported by the evidence.  Defendant obtained an independent review that concluded plaintiff's injury was from the 1993 accident and plaintiff failed to provide any supporting record from the workers' compensation proceedings to support plaintiff's contrary position.  Moreover, the only physician to support plaintiff's theory of causation was the physician plaintiff saw on December 10, 2002, who documented that plaintiff stated his injury was from pulling on the trailer release.  Plaintiff concedes that Dr. Hearon's 2002 report, recommending the surgery, does not list the cause of his current injury.  A diagnosis by plaintiff's surgeon would be more telling than a physician who examined plaintiff on one occasion in the emergency room.  Moreover, the record fails to indicate that the emergency room doctor, unlike the independent examiner, reviewed any of plaintiff's records before drawing his conclusion as to plaintiff's injury.

There is no evidence that defendant based its decision on a

mistake of law.  In the Pretrial Order (p. 9), plaintiff contends that "Defendant's medical consultant at MRIA and investigator at CMI do not understand that Kansas Workers compensation law allows a new compensation claim for aggravations and recurrences of old injuries previously resolved" and "Defendant's Administrative Committee for the Plan that denied Plaintiff's claim for medical benefits does not understand Kansas workers compensation law that allows a new compensation claim for aggravation and recurrences of old injuries previously resolved."  The court will assume, for purposes of discussion, that these contentions relate to a claim that defendant based its decision on an error of law.  But giving plaintiff the benefit of the assumption, the court cannot identify any development or discussion of the contentions in any of plaintiff's submissions  (Docs. 47, 54 and 57).  The court finds that plaintiff has abandoned these contentions. <u>Swanson v. Guthrie Independent School District</u>, 135 F.3d 694, 702-03 (10th Cir. 1998).

Plaintiff finally asserts that the inquiry made to an unknown CMI investigator as to whether the evidence of the 1993 accident was presented before the ALJ supports a finding of bad faith. Plaintiff's allegation of inappropriate contact does not suggest to the court that there was some sort of conspiracy; rather it might be construed as an indication that the committee was attempting to determine what transpired during the workers' compensation proceeding, since plaintiff failed to provide defendant with the administrative record.  There is no evidence that defendant conducted (or was trying to conduct) its review in

bad faith or under a conflict of interest.

Accordingly, the court finds that the committee's decision to deny ERISA benefits was supported by substantial evidence. Defendant's motion for summary judgment is granted and plaintiff's motion is denied.

IT IS SO ORDERED.

Dated this   23rd   day of November 2005, at Wichita, Kansas.


                                    s/ Monti Belot
                                    Monti L. Belot
                                    UNITED STATES DISTRICT JUDGE